# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **TERDEVON FRITH, SR.** | **CIVIL ACTION NO. 3:11-cv-0187** |
| **LA. DOC # 448325** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **OAS/NORTH JAILS, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Terdevon Frith, Sr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 31, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is currently incarcerated at the Jackson Parish Corrections Center (JPCC), Jonesboro, Louisiana. He complains of conditions of confinement he was exposed to at that facility and at various other prisons at various other times.

In his suit caption he named as defendants, the "OAS/North Jails (Caldwell, Jackson, East Carroll, Riverbend, Richland, Richwood, and Franklin) along with the LDOC. However, in his prayer for relief he demanded $200,000 only from the LDOC. In his amended complaint he again requested damages of $200,000, presumably from the remaining defendants. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE**.

### *Background*

In his original complaint plaintiff provided a litany of claims – he is malnourished, exposed to second hand tobacco smoke, and his grievances are ignored. He claimed that as a third felony

offender, he should not be housed in a parish jail. He complained that he was not afforded sufficient outdoor recreation and that his pleas to obtain medical testing have been ignored. He complained that he was attacked by other inmates while incarcerated at the East Carroll Detention Center (ECDC) and elsewhere because these facilities do not adequately screen and segregate inmates. He claimed that as a result of these altercations, his face was scarred. Finally, he complained that he is fed a diet too high in sodium resulting in turn with blood pressure problems.

Plaintiff was directed to amend his complaint to provide, among other things, "...a concise statement with respect to each incident and provide the date, place and time of the incident, along with the identity of the alleged perpetrator and a detailed description of the injury, harm, or prejudice sustained as a result of the alleged constitutional violation." [Doc. #4]

On March 16, 2011, plaintiff submitted a 14-page rambling response to the amend order. Plaintiff dropped his exposure to second-hand tobacco smoke claim. [Doc. #5, p. 1] Thereafter, he alleged that:

1. On March 17, 2009, RBDC Warden Ronnie Harris, who is also the Warden at ECDC, transferred plaintiff from RBDC to the Caldwell Detention Center (CDC). According to the Warden, the move was designed to "get him out of his hair." Plaintiff claimed to have filed grievances requesting a transfer to a "better facility."

2. On March 17, 2009, upon his arrival at CDC he was placed in a dorm with inmate Robert Hill. According to plaintiff, he and Hill had been involved in a physical altercation on March 3, 2009, while they were incarcerated at ECDC. (Plaintiff also alleged that his Master Prison Record does not note the altercation and plaintiff contends that this is evidence of a conspiracy.) Plaintiff contends that Warden Harris and CDC Warden Frederick should be liable for the unspecified injuries he sustained while at CDC in March 2009.

3. Plaintiff also maintained that "the jails" should be liable for failing to place the two former

2

combatants on "restriction" in accordance with LDOC Guidelines which also require segregation of the offenders.

4. Plaintiff claimed that he received "severe injuries" as a result of the altercation with Hill on March 17, 2009, and that his injuries were "... due to the negligence of LDOC and its constinuants (sic) who are rogue establishments ... (ECDC, CDDC, RBDC)..." Plaintiff also complained that the investigating officers and health care professionals refused to take photographs of his injuries. He also admitted that he did not want to press charges on his assailant.

5. Plaintiff complained that on some unspecified date while at RBDC he complained that as a Third Felony Offender, he should not be housed with detainees at a parish jail and he complained that his numerous requests (on unspecified dates) to be transferred to an LDOC facility were ignored, and the LDOC was not made aware of his requests for transfer.

6. On unspecified dates, RBDC and ECDC (which, according to plaintiff, have the same leadership), and "the rest of these facilities" have caused plaintiff to endure some punishment that is violative of the constitution or otherwise contributed to the "hardship" plaintiff has complained about.

7. More specifically, plaintiff complained that when he was incarcerated at the Jackson Parish Corrections Center he suffered "severe malnutrition" during his 9 month period of incarceration there during some unspecified time. According to plaintiff, he was deprived "... of Vitamin C which may cause scurvy, and a lack of Omega 3 Fatty Acids in which studies have proved is sufficient to prevent skin organ problems." Plaintiff admitted that he has received no diagnosis but noted "some abnormalities" including weakness, which is a sign of thiamin deficiency and "shark skin" which is a sign of Omega 3 deficiency. Plaintiff requested a declaratory judgment "that an inmate doing time shouldn't have to endure such malnutrition." He further faulted Jackson Parish Corrections Center for failing to do "cultures" to determine any deficiency or disease.

8. Plaintiff also complained that while incarcerated at Jackson Parish, he was allowed outdoor recreation only two times a week and this caused the oxygen levels in his blood to be low.

9. Plaintiff withdrew his complaint about the high sodium content of the food served in the OAS/North facilities and has noted that salt is now made available as an option at the food tables.

10. Plaintiff re-urged his complaint about dietary insufficiencies at Jackson Parish due to the facility's failure to employ a dietician.

11. He claimed that he was denied appropriate medical care when unspecified defendants "refused to give [him] a test of his culture so he could get an inclusive observation of his blood." He argued that "...Dr. Paula Hearn diagnosed him with yeast and prescribed some anti-fungal cream, [he] used the prescribed medicine for the prescribed duration of time and came to find that the microorganism was living for extensive amounts of time on the outer ... layer of his skin, or the doctor had mis-diagnosed the condition altogether." Plaintiff complained that he asked to see Dr. Hearn again on some unspecified date but she replied that there was nothing wrong with plaintiff "...even though he has severe hyperpigmentation in his genital area and the itching that was involved in his initial reason for going to see Dr. Hearn is ongoing and continues to hound [him] day and night."

12. Plaintiff was housed at the Franklin Parish Detention Center (FPDC) from March 19, 2009, to April 23, 2010. Although the facility employed a dietician, plaintiff complained that he was not allowed one hour of recreation every day and this inflicted severe emotional distress. The facility also violated DOC policy when it stripped plaintiff of his work-release or trusty status. Plaintiff claimed that he was not allowed to attend his father's funeral and implied that he lost his prison job because he wrote the warden several times requesting permission to attend.

13. Plaintiff's request to "get his culture checked" were denied at FPDC. However, he was examined by Dr. Charles Reed who prescribed a sulfa drug, Sulfamethaxazole for his recurring

mouth sores but, according to plaintiff, the physician did not diagnose the condition. Plaintiff used the drug for week as prescribed but was never advised concerning the nature of his condition. Plaintiff self-diagnosed the condition as "Oral HSV."

14. Plaintiff was also housed at the Richwood Corrections Center from April 2010- July 2010. Plaintiff was examined by two physicians at this facility and they too "failed to get a conclusive analysis of [his] culture..." Plaintiff also claimed that he was "severely malnourished" at this facility because of a lack of Omega 3 and Vitamin C.

15. Plaintiff requested that his complaints against Richland Parish Jail be dismissed.

16. Plaintiff concluded his amended complaint by requesting that his suit against the various facilities and their wardens be allowed to progress because, as a third felony offender, he should be placed in a LDOC facility where he can get his "culture" tested, have daily outdoor recreation, and a better diet.

### *Law and Analysis*

#### *1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d

480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's original complaint provided insufficient information and therefore he was instructed in the law and directed to amend. He was ordered to provide, among other things, "...a concise statement with respect to each incident and provide the date, place and time of the incident, along with the identity of the alleged perpetrator and a detailed description of the injury, harm, or prejudice sustained as a result of the alleged constitutional violation." [Doc. #4] Instead, he produced a 14-page, rambling, handwritten litany of complaints that did not comply with the order. Nonetheless, his amended complaint has been reviewed. Plaintiff has failed to state a claim for which

relief may be granted and his complaint should therefore be dismissed for that reason.

### 2. Plaintiff's Claims for Relief

Plaintiff's claims for relief may be summarized as follows:

(1) Plaintiff contends that he was the victim of violence at the hands of a fellow inmate on March 3, 2009, while incarcerated at the ECDC and again on March 17, 2009, while he was incarcerated at the Caldwell Detention Center. He faulted the facilities along with Wardens Harris and Frederick for failing to follow LDOC guidelines and directives. [Paragraphs 1-4, supra]

(2) Plaintiff contends that as a third felony offender, he is entitled to be housed at an LDOC facility where he can obtain a test of his "culture", daily outdoor recreation, and a better diet. [Paragraph 5; 16]

(3) Plaintiff contends that he suffered from "severe malnutrition" and was afforded insufficient outdoor recreation while he was incarcerated at the Jackson Parish Corrections Center [Paragraphs 6-8, 10] and, that he was denied sufficient out door recreation while incarcerated at the FPDC from March 2009-April 2010. [Paragraph 12]

(4) Plaintiff claimed that he was denied appropriate medical care when he was denied "a test of his culture" and when he was mis-diagnosed and treated incorrectly by Dr. Hearn. [Paragraph 11] He complained that he was also denied such a test at FPDC and was mis-diagnosed and treated incorrectly by Dr. Reed at FPDC. [Paragraph 13] Plaintiff also claimed that he was denied appropriate medical care when he was examined by two physicians at Richwood Corrections Center during the period from April - July 2010 and neither physician analyzed his "culture" and therefore failed to diagnose his severe malnutrition. [Paragraph 14]

(5) Plaintiff complained that he was not allowed to attend the funeral of his father and was deprived of his trusty status because he wrote numerous requests to the warden for permission to attend the funeral. [Paragraph 12]

(6) Plaintiff's original complaint alleged that his grievances were not answered. [Doc. #1]

Plaintiff dismissed his claims concerning exposure to second hand tobacco smoke, a high sodium diet, and all claims against the Richland Parish Jail. [Doc. #5, page 1and Paragraphs 9 and 15, *supra*]

### 3. The Defendants

In his original complaint plaintiff named as defendants the OAS/North Jails (Caldwell, Jackson, East Carroll, Riverbend, Richland, Richwood, and Franklin), among others. As he was previously instructed, Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether an entity such as a corrections facility has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. To the extent plaintiff seeks judgment against these prisons, he must show that they are juridical persons capable of being sued.

To the extent that the prisons themselves, or the corporation identified by plaintiff – "OAS/North Jail," are juridical persons capable of being sued, it appears that plaintiff seeks to hold these alleged corporate entities liable under 42 U.S.C. § 1983 for the acts of their employees. However, just as a municipal corporation is not vicariously liable for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights. See *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir.2003), where the Fifth Circuit extended municipal corporate liability under § 1983 to include private prison-management corporations and their employees. Plaintiff's complaint is devoid of any allegations that an official policy or custom was the "moving force" behind their employees' alleged deprivation of his civil rights. In other words, plaintiff's claims against these prisons should

be dismissed either because they are not juridical entities capable of being sued, or, in the alternative, because plaintiff has not established their liability under Section 1983.

Further, to the extent that plaintiff seeks to hold the LDOC liable, his claims are also subject to dismissal. The LDOC is an "executive department" of the state of Louisiana and thus, like the State itself, it is immune from suit under the Eleventh Amendment. *See Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312 (5th Cir. 1999).

Plaintiff has failed to state a claim for which relief may be granted with respect to his claims against the various prisons where he was housed. Plaintiff's claims against the LDOC must be dismissed because the LDOC is immune from suit under the Eleventh Amendment.

### 4. Failure to Protect Claim

Plaintiff complained that he was involved in "altercations" with a fellow inmate and thus implies that the defendants are liable for failing to protect him. The Eighth Amendment imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). Not "every injury suffered by one prisoner at the hands of another," however, "translates into constitutional liability for prison officials responsible for the victim's safety." *Id.*, 511 U.S. at 834. Rather, a prisoner must demonstrate both that (1) "he is incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official's state of mind is one of "deliberate indifference" to the prisoner's safety. *Id.*; *Horton v. Cockrell*, 70 F.3d at 401.

Nevertheless, a detailed analysis of plaintiff's failure to protect claim is unnecessary because it clearly appears on the face of the pleadings that this claim was filed beyond the period of limitations established by the jurisprudence with respect to civil actions filed pursuant to 42 U.S.C. §1983.

The district court is authorized to dismiss a claim as frivolous "it is clear from the face of a

9

complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte. See Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984). However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981). A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim. See, *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Plaintiff's claims – that the defendants failed to protect him from violence at the hands of a fellow inmate – accrued on March 3 and March 17, 2009. On those dates plaintiff had knowledge of all the facts necessary to know that his rights were violated.

The Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by La. Civ.Code Ann. art 3492 in a §1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980). Therefore, plaintiff should have filed his complaint by March 17, 2010. Plaintiff's complaint was signed on December 16, 2010 and filed on January 31, 2011. Even if plaintiff is afforded the benefits of the mailbox rule and his pleading considered filed as of the date of signing, his failure to protect claim was filed well beyond the expiration of the 1-year period of

limitations and therefore, must be dismissed as frivolous.

*5. Transfer to an LDOC Facility*

Plaintiff claims that as a third felony offender, he is somehow entitled to be housed in a more salubrious environment, that is to say, a facility operated by the LDOC. Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department..." See La. R.S.15:824(A).

Plaintiff is an LDOC inmate and therefore his placement is solely within the purview of the LDOC. Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451

(1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000). Plaintiff's allegation to the contrary fails to state a claim for which relief may be granted.

### 6. Malnutrition and Outdoor Recreation

The Constitution mandates that inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.' " *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996) ( per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.' " *Talib v. Gilley*, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

Here, plaintiff has not alleged that he was denied anything close to the "minimal measure of life's necessities...". Indeed, he alleged that the prison diets lack only a sufficient amount of Vitamin C and Omega 3 oils. However, that claim is purely conclusory.

Further, plaintiff complained of physical harm resulting from the defendants' alleged dietary failures, but those claims are conclusory as well. As is shown hereinafter, plaintiff has been examined by four physicians and presumably by other health care professionals during the period of his incarceration and none of them diagnosed any dietary related malady. In other words, plaintiff has not alleged facts sufficient to state a claim that he was deprived of the "minimal civilized measure of life's necessities," and has offered only conclusory allegations to support his claim that the prison diet was inappropriate to his condition and has caused him any harm; his allegations are

clearly insufficient to state a claim for which relief might be granted.

Plaintiff's claim that he was denied sufficient out door recreation which in turn led to physical or emotional problems is likewise conclusory. Plaintiff complained that while incarcerated at Jackson Parish, he was allowed outdoor recreation only two times a week and this caused the oxygen levels in his blood to be low. Plaintiff also complained that while he was housed at the FPDC during the period from March 19, 2009 to April 23, 2010 he was not allowed one hour of daily recreation and this inflicted severe emotional distress. Of course, plaintiff's suggestion that the oxygen content of outdoor air is greater than the oxygen content of indoor air is ludicrous as is his claim that his confinement resulted in low blood-oxygen levels. Further, his claim of emotional damage, without proof of physical injury, must be denied pursuant to the provisions of 42 U.S.C. §1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.")

Finally, and more to the point, prisoners have no absolute constitutional right to outdoor recreation, so long as some form of exercise is permitted, or, the conditions of confinement, when viewed as a whole, are not violative of the Eighth Amendment. *See Callicutt v. Panola County Jail*, 200 F.3d 816 (5th Cir. 1999)(unpublished), citing, *Jones v. Diamond*, 594 F.2d 997, 1012-13 (5th Cir.1979); *see also Scott v. Gusman*, Civil Action No. 10-2706 (E.D.La., February 14, 2011)**,** 2011 WL 666851 (Even if a prisoner is allowed outside for only 45 minutes, twice a week, that "... is not an atypical, significant deprivation in a prison setting, and it does not rise to the level of a constitutional violation. *See Argue v. Hofmeyer*, 80 Fed. App'x 427, 429 (6th Cir.2003); *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir.2003); *Figueroa v. Dinitto*, 52 Fed. App'x 522, 523 (1 st Cir.2002); *Smith v. Romer*, No. 96-1211, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997); *Smith v. Beatty*, No. 95-1493, 1996 WL 166270, at *1 (7th Cir. Apr. 5, 1996). Even severe restrictions on or

complete denials of outdoor recreation have been found to be constitutional. *See, e.g., Chavis v. Fairman*, No. 92-C-7490, 1994 WL 55719, at *5 (N.D.Ill. Feb. 22, 1994) ('Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity.'), aff'd, 51 F.3d 275 (7th Cir.1995); *Rue v. Gusman*, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D.La. May 11, 2010); *Broussard v. Phelps*, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D.La. Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise)."

Plaintiff's complaint concerning recreation fails to state a claim for which relief may be granted.

### 7. Medical Care

Plaintiff claims that he was denied appropriate medical care when he was denied "a test of his culture" and when he was misdiagnosed and treated incorrectly by Dr. Hearn [Paragraph 11]; when the test was denied while he was incarcerated at FPDC and was misdiagnosed and treated incorrectly by Dr. Reed at FPDC. [Paragraph 13]; and when the two physicians at Richwood Corrections Center failed to analyze his "culture" and therefore failed to diagnose his severe malnutrition. [Paragraph 14]

The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective

intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings.

As a matter of fact, it is manifestly obvious that plaintiff simply disagreed with the diagnosis and course of treatment that were recommended the four physicians who examined him during the course of his incarceration. Plaintiff's disagreement with the diagnosis and course of treatment that was ultimately provided to him falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

To the extent that the pleadings imply negligence or even malpractice on the part of the defendants with regard to his medical care claim, he still fails to state a claim for which relief may be granted since deliberate indifference is not the equivalent of negligence. Put simply, deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual

knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an excessive risk of injury to him, and that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed and that they drew that inference. *Id.* at 837.

Diagnosis and treatment decisions are a classic example of a matter best left to the medical judgment of health care professionals. *Gobert*, 463 F.3d at 346. It is for that reason that, as noted above, a prisoner's disagreement with medical diagnosis and treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *Id.*

Plaintiff has again failed to state a claim for which relief may be granted.

### 8. Funeral attendance, prison job, retaliation

Finally, plaintiff complained that he was not allowed to attend the funeral of his father. Congress enacted 42 U.S.C. § 1983 as "a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

Thus, to state a cause of action under 42 U.S.C. § 1983, the plaintiff must plead various elements including, the deprivation of a clear right, privilege or immunity secured to the plaintiff by the Constitution of the United States of America. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) ("inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a 'right

secured by the Constitution and the laws'"). In addition, a plaintiff needs to establish that the act or omission by the defendant was intentional or at least deliberately indifferent to the Constitutional or Federal law rights of the plaintiff. *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir.1990); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir.1992) (deprivation can result from tortious conduct exceeding mere negligence but not quite rising to the level of intentional, e.g., deliberate (or conscious) indifference, recklessness or gross negligence), *reh'g granted* and opinion vacated by *Doe v. Taylor Independent School District*, 987 F.2d 231 (5th Cir.1993), on rehearing, *Doe v. Taylor Independent School District*, 15 F.3d 443, 450 (5th Cir.1994). Finally, the plaintiff must show that he suffered actual injury. *Memphis Community School District v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) (where there is no injury present, no compensatory damages can be awarded).

To the extent that plaintiff claims that he is entitled to judgment simply because he was not allowed to attend his father's funeral, he fails to state a claim for which relief may be granted because he cannot establish the existence of a constitutional right. See *Verrone v. Jacobson*, No. 95 CIV. 10495(LAP), 1999 WL 163197, at *5 (S.D.N.Y.1999) (noting that "a prisoner does not have a protected right to attend the funeral of a relative"); *Butler v. Snyder*, 106 F.Supp.2d 589 (D.Del.,2000); *Green v. Coughlin*, 1995 WL 498808, at *1 (S.D.N.Y. Aug. 22, 1995) ("Generally, prison inmates do not have a constitutionally protected right under § 1983 to attend a funeral [and] at least two courts in this district have held that inmates have no protected right to attend the funerals of family members") (internal citations omitted); *Colon v. Sullivan*, 681 F.Supp. 222, 223 (S.D.N.Y.1988) (holding that denying a prisoner the opportunity to attend a relative's funeral does not violate a constitutionally protected liberty interest); *Mercer v. Green Haven Correctional Facility*, 1998 WL 85734 (S.D.N.Y.,1998).

Next, plaintiff complains that he lost his trusty status and prison job. Standing alone, that

17

claim is also subject to dismissal. Plaintiff cannot point to a constitutionally cognizable liberty interest in connection with his classification with respect to this "trusty" status, or in any changes to his prison work assignment. *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir.1989) ("[A] prisoner has no constitutional right to a specific work assignment.").

Finally, taken together, plaintiff implies that his continued requests for permission to attend his father's funeral resulted in the loss of his trusty status. Plaintiff thus implies that he was the victim of retaliation.

To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995). The plaintiff must allege more than just his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999). Here, plaintiff has alleged, in conclusory fashion, "... that one warden at the establishment (FPDC) just up and decided to relieve him of his work-release trusty status because [he] had written him several times about going to his father's funeral in New Orleans..." Further, plaintiff has not provided sufficient facts to establish a chronology of events from which retaliation may be plausibly inferred. He has not alleged when the funeral was, nor when and how often he requested leave to attend the funeral, nor when he was relieved of trusty status.

Further, plaintiff failed to establish causation as required by the jurisprudence. As noted above, plaintiff must allege facts to demonstrate that "but for" his continued requests, the alleged retaliatory adverse act –the loss of his trusty status– would not have occurred. Plaintiff, at best,

implies such a connection, but even that claim is conclusory at best.

Finally, even if the scenario suggested establishes retaliation, plaintiff has not shown that the alleged retaliatory act had a chilling effect on him, since it is clear that he continued to file grievances and complaints. *Compare Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006)(A retaliatory adverse act must be more than *de minimis* to state a viable retaliation claim; the act must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights.") Plaintiff has not shown how his imprisonment following the loss of trusty status was in any way more burdensome than his imprisonment prior to the status adjustment.

### 9. Grievances

Finally, in his original complaint, plaintiff alleged that he was entitled to relief because the defendants failed to respond to his prison grievances. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance

procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Since there is no constitutionally protected right to participate in a prison grievance procedure, plaintiff's complaint fails to state a claim for which relief may be granted.

### Recommendation

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and for requesting money damages from the LDOC, an entity that is immune from such a suit, all in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall**

bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, May 6, 2011.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE